NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALEXA MCKENZIE MASON,<br><br>            Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>            Defendant. | Civ. No. 15-1861<br><br>OPINION |

THOMPSON, U.S.D.J.

INTRODUCTION

This matter has come before the Court to review pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of the Social Security Administration denying Plaintiff Alexa McKenzie Mason's application for disability insurance benefits under Title II of the Social Security Act. Plaintiff seeks a reversal or, in the alternative, remand of the Acting Commissioner's decision denying her request for Social Security benefits. (ECF No. 6). Defendant Acting Commissioner of Social Security ("Commissioner") seeks affirmance of the Commissioner's decision. (ECF No. 7). The Court has decided the appeal upon the submissions of both parties and without oral argument, pursuant to Local Civil Rule 9.1(f). For the reasons detailed below, the decision of the Commissioner is affirmed.

1

BACKGROUND

Plaintiff is a thirty-nine-year-old mother of two. (R. 62, 222). Plaintiff had serious back pain from a relatively young age, and underwent lumbar disc surgery in 2006. (R. 94, 321-22). The surgery had positive results. (R. 95, 860). Plaintiff went on to earn a dental assisting certificate, and she worked as a dental assistant from 2007-2009. (R. 62-63). She stopped working in the Summer of 2009 because she felt her office treated patients unconscionably poorly. (R. 63). After she quit, she was unable to find another job with flexible hours to accommodate her childcare responsibilities. (R. 63-64).

On September 27, 2010, at the age of thirty-four, Plaintiff had a right cerebral stroke. (R. 342-43, 860). She was kept in the hospital for four days, and sent home in stable condition. (R. 342-43). She went on to have physical and occupational therapy. (R. 65). The extent of Plaintiff's recovery has been a matter of contention is this case, but her neurological evaluation a month after her release was fairly positive. (R. 378). Plaintiff had some residual problems on her right side, including some swaying in her gait, and some difficulty holding objects and writing with her right hand. (*Id.*). Later examinations showed continuing difficulties with Plaintiff's right arm and hand, as well as complaints about headaches and fatigue. (R. 499-500, 846).

On December 3, 2010, Plaintiff filed a Title II application for disability insurance benefits. (R. 10). She alleged her disability began on the day of her stroke. (*Id.*). Her claim was denied initially on June 28, 2011, and denied again upon reconsideration on October 14, 2011. (*Id.*). Plaintiff filed a request for a hearing which was held on January 24, 2013. (*Id.*). Plaintiff filed medical records after the hearing, and then a second hearing was held on July 24, 2013, where a medical expert and a vocational expert testified. (*Id.*). On August 19, 2013, the

presiding Administrative Law Judge ("the ALJ") determined that Plaintiff was not disabled for the relevant period. (R. 23). Plaintiff requested that the Social Security Administration's Appeals Council review the ALJ's decision, but they denied her request for review. (R. 1). On March 12, 2015, Plaintiff filed a Complaint to initiate this action. (ECF No. 1).

## LEGAL STANDARDS

### A. Standard of Review

This Court reviews Social Security appeals under 42 U.S.C. § 405(g), which empowers this Court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court reviews questions of law de novo. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (2007). This Court reviews questions of fact under a "substantial evidence" standard of review. 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate." *Thomas v. Comm'r of Soc. Sec. Admin.*, 625 F.3d 798, 800 (3d Cir. 2010) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)); *see also Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). Where the Commissioner's factual findings are supported by substantial evidence in the record, they are considered conclusive even though the Court might have decided the inquiry differently. 42 U.S.C. § 405(g); *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012).

### B. Standard for Disability Benefits Determination

Disability is defined as the "inability to engage in any substantial gainful activity[1] by reason of any medically determinable physical or mental impairment which can be expected to

---

[1] "Substantial gainful activity" refers to jobs that exist in large numbers in the region where the claimant lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A).

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To show disability, a claimant must "furnish[] such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."  *Id.* § 423(d)(5)(A).

The Commissioner employs a five-step sequential evaluation process for disability claims.  *See generally* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Plummer*, 186 F.3d at 428.  The threshold inquiry looks to (1) whether the claimant has engaged in any "substantial gainful activity" since her alleged disability onset date.  If not, the Commissioner considers (2) whether the claimant has any impairment or combination of impairments that is "severe" enough to limit the claimant's ability to work.  *Id*. §§ 404.1520(b)–(c), 404.1521.  If the claimant has a severe impairment, the Commissioner then examines the objective medical evidence to determine (3) whether the impairment matches or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. §§ 404.1520(d), 404.1525, 404.1526.  If so, the claimant is then eligible for benefits; if not, the Commissioner determines (4) whether the claimant has satisfied his burden of establishing that he or she is unable to return to his past relevant work.  *Id.* §§ 404.1520(f), 404.1560(b); *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).  If the claimant meets this burden, the burden shifts to the Commissioner to show (5) whether other work exists in significant numbers in the national economy that the claimant could perform given her medical impairments, age, education, past work experience, and Residual Functional Capacity ("RFC").[2]  20 C.F.R. § 404.1520(g); *Poulos*, 474 F.3d at 92.

---

[2] A "Residual Functional Capacity" is a claimant's remaining ability to perform work, given his/her impairments.  20 C.F.R. § 404.1520(e).  For example, although Plaintiff has an impairment affecting her right hand, the ALJ found in Plaintiff's RFC that Plaintiff is still able to lift/carry ten pounds frequently and twenty pounds occasionally, permitting Plaintiff to perform some light work.  (R. 16).

4

ANALYSIS

A. The ALJ's Opinion

Following this five-step process, the ALJ found the following: (1) Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of September 27, 2010 (R. 12); (2) Plaintiff has severe impairments limiting her ability to work, namely, disorders of the back, the residual effects of her stroke, headaches, and obesity (R. 13); (3) Plaintiff does not have any impairments or combination of impairments that meet the requirements of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1 (which would have resulted in automatic eligibility for benefits) (R. 15); (4) Plaintiff did satisfy her burden of showing that she is unable to return to her past work (R. 21); and (5) there are jobs in significant numbers in the national economy that Plaintiff can perform, given her impairments, age, education, past work experience, and RFC (R. 22). This last finding resulted in a denial of disability benefits. (R. 23).

B. Plaintiff's Challenges to the ALJ's Opinion

Plaintiff makes six arguments attacking the ALJ's opinion: (1) the ALJ failed to follow the correct standard when she determined that Plaintiff's mental impairments were not severe; (2) the ALJ failed to explain why Plaintiff's impairments did not meet the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) the ALJ failed to consider Plaintiff's impairments in combination; (4) the ALJ failed to provide sufficient reasons for rejecting certain doctors' opinions; (5) the ALJ failed to apply certain required factors in assessing Plaintiff's own credibility; and (6) the ALJ failed consider how Plaintiff's lack of bilateral manual dexterity would affect her ability to work. (Pl.'s Br., ECF No. 6, at 2). The Court will address each argument in this order, which mirrors the order used in the Commission's five-step evaluation process, as well as the sequential order of the ALJ's Opinion and Defendant's Brief.

*1. The Severity of Plaintiff's Mental Impairments*

In order to receive disability benefits, a claimant's impairments, either individually or in combination, must be "severe." 20 C.F.R. § 404.1520(a)(4)(ii). While the ALJ did find some of Plaintiff's impairments to be severe, she did not find Plaintiff's mental impairments to be severe. (R. 13). Plaintiff argues that the ALJ erred by not finding her depression or anxiety to be severe. (Pl.'s Br., ECF No. 6, at 16).

Plaintiff and Defendant largely agree on the legal standard at issue. (*Id.* at 15-16; Def.'s Br., ECF No. 7, at 11-12). An impairment or combination of impairments is "severe" when it places a significant limit on a claimant's ability to perform basic work activities. *Fusco v. Colvin*, No. 14-2116, 2014 WL 6908919, at *3 (D.N.J. Dec. 9, 2014) (citing 20 C.F.R. § 404.1520(c)). Plaintiff and Defendant point to different facts in the record to show the severity of Plaintiff's mental impairments. Plaintiff points to a psychiatric assessment from December 2012 that says Plaintiff is "unable to sleep well, never feels rested . . . Constantly thinks about her lost ability, lost occupation and is increasingly despondent." (Pl.'s Br., ECF No. 6, at 16; R. 820). Defendant points to a psychiatric report from January 2013 that says Plaintiff's mood is improving with medication (R. 818), and highlights Plaintiff's consistent ability to carry on with her daily activities, as well as Plaintiff's behavior at the hearing where she did not appear to have any concentration deficits or allege any significant mental limitations. (Def.'s Br., ECF No. 7, at 11).

The severity of Plaintiff's mental impairments is a factual question. As such, this Court will affirm the ALJ's decision as long as there is "such relevant evidence as a reasonable mind might accept as adequate." *Plummer*, 186 F.3d at 427 (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). The ALJ analyzed the above evidence over five paragraphs to conclude that

6

Plaintiff's mental impairments are not severe. (R. 14). This evidence and analysis is sufficient for a reasonable mind to conclude that Plaintiff's depression and anxiety are not "severe" enough to satisfy 20 C.F.R. § 404.1520(c), and therefore Plaintiff's argument fails.

    *2. The Listed Impairments*

If a claimant's impairments or combination of impairments match a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 (and meet the applicable duration requirement), then the claimant is eligible for benefits. 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ found that Plaintiff does not have an impairment or combination of impairments that match a listed impairment. (R. 15). Plaintiff argues that *Burke v. Commissioner of Social Security*, 317 F. App'x 240 (3d Cir. 2009) requires the ALJ to thoroughly explain any determination that a claimant does not meet a listed impairment. (Pl.'s Br., ECF No. 6, at 8). Plaintiff states that the ALJ failed to explain her determination that Plaintiff does not meet the following listed impairments: Central Nervous System Vascular Accident, Disorders of the Spine, and Anxiety-Related Disorders. (Pl.'s Br., ECF No. 6, at 6-9).

The ALJ analyzed the first two listed impairments and found that Plaintiff does not meet them. (R. 15). The ALJ dedicated a paragraph to each listed impairment. (*Id.*). For Disorders of the Spine, she wrote: "the requirements of listing 1.04 have not been met because the evidence fails to demonstrate the existence of a 'herniated nucleus pulopsis, [various other conditions] . . . facet arthritis, or verbal fracture' which results in the compromise of a nerve root or the spinal cord along with the requirements of A, B, or C of this listing." (*Id.*). While fairly succinct, this explanation is more extensive that the language the Third Circuit found acceptable in *Burke v. Commissioner*:

> Burke argues that, at step three, the ALJ did not properly consider whether her impairments met or equaled a listed impairment. Burke's argument is without

7

> merit. The ALJ evaluated the medical evidence and considered five disability listings related to Burke's impairments and gave reasons why her impairments failed to meet or equal each one. For example, with regard to Burke's spinal problems, the ALJ explained: "[C]laimant's impairment does not meet the criteria of Listing 1.04, Disorders of the Spine, as she does not have a herniated disc or the necessary evidence of nerve root compression." A.R. at 15. We reject Burke's argument.

317 F. App'x at 244. Therefore, The ALJ's relatively lengthy explanations of why Plaintiff does not meet the first two listings are more than sufficient.

The ALJ did not explain why Plaintiff does not meet the third listing, Anxiety-Related Disorders, because she had already found that Plaintiff's mental ailments were not "severe." (R. 15). According to the Commission's five-step process, only "severe" impairments are able to meet a listed impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Claimants with non-severe impairments are found to be "not disabled." *Id.* As noted above, the ALJ permissibly found that Plaintiff's mental impairments were not severe. Therefore she did not need to analyze why Plaintiff does not meet the Anxiety-Related Disorders listing.

*3. Considering Plaintiff's Impairments in Combination*

If a claimant is obese, ALJs must consider the claimant's obesity in combination with his/her other impairments. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503-04 (3d Cir. 2009). An ALJ need not employ any "magic words" when performing this analysis, but some discussion is required. *Id.* Plaintiff argues that the ALJ failed to discuss Plaintiff's obesity headaches and depression in combination with her other impairments. (Pl.'s Br., ECF No. 6, at 14).

First, Plaintiff relies on *Diaz* and Social Security Ruling ("SSR") 00-3p[3] for the rule that ALJs must consider obesity in combination with other impairments. (*Id.*). However, headaches

---

[3] This ruling was superseded by Social Security Ruling 02-1p, but the *Diaz* Court stated that 02-1p did not materially amend 00-3p. 577 F.3d at 503.

and depression *caused* by obesity are not the same as obesity itself. The Ruling only requires that ALJs consider obesity in combination with other impairments, not secondary conditions caused by obesity. SSR 00–3p, 65 Fed.Reg. 31039, 31040–42 (May 15, 2000).

Second, the ALJ did consider Plaintiff's obesity in combination with her other impairments. (R. 15). She explicitly said, "I have considered the potential impact of obesity in causing or contributing to co-existing impairments as required by Social Security Ruling 02-01p." (*Id.*) The ALJ went on to quote the Ruling at length, and then explain how obesity can impact other impairments, such as respiratory ailments. (*Id.*). The ALJ concluded her discussion by finding that Plaintiff's obesity in combination with her other impairments would in fact not allow her to perform any level of work besides light work. (R. 16). This amount of discussion satisfies the Third Circuit's mandate for enough discussion "sufficient to enable meaningful judicial review." *Diaz*, 577 F.3d at 504; *see also Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000) (requiring an ALJ to "set forth the reasons for his decision" rather than solely providing a "conclusory statement").

*4. The ALJ's Treatment of Plaintiff's Medical Records*

When assessing a claimant's impairments, the opinions of the claimant's treating physicians must be given great weight. *Plummer*, 186 F.3d at 429. An ALJ may not reject a physician's finding based on her own speculation, but she can weigh conflicting medical opinions and evidence to determine which evidence is more credible. *Id.* When ALJs reject a treating physician's finding based on conflicting opinions or evidence, they must explain their reasoning. *Id.*

Plaintiff submitted many medical records to the ALJ, including several from her treating physician, Dr. Ilaria. (R. 514-23; R. 845-52). The ALJ accepted many of Dr. Ilaria's findings

and suggestions, but she rejected his suggested limitations as to Plaintiff's standing and walking ability, and Plaintiff's lifting/carrying ability. (R. 18 n.1). Plaintiff argues that the ALJ did not point to any conflicting medical evidence when rejecting Dr. Ilaria's statements, nor did she provide sufficient reasons for rejecting Dr. Ilaria's findings. (Pl.'s Br., ECF No. 6, at 9-11).

The ALJ discussed a number of conflicting pieces of evidence when she rejected Dr. Ilaria's findings. In a December 2012 report, Dr. Ilaria checked a box saying that Plaintiff could only stand or walk for a maximum of two hours per workday. (R. 516). However, the ALJ noted that on a January 2013 report using the same form, a treating physician named Dr. DeTulio did not check any boxes to limit Plaintiff in her standing or walking. (R. 21; R. 530). The ALJ sent medical interrogatories to another doctor who reviewed Plaintiff's file, Dr. Galst, and he also concluded that Plaintiff was not limited in her standing or walking. (R. 19; R. 864). Lastly, the ALJ summarized Plaintiff's records relating to her successful lumbar disc surgery in 2006, and Plaintiff's current daily activities, by way of further explanation for what limitations she chose to include in Plaintiff's Residual Functional Capacity ("RFC"). (R. 19-20).

Dr. Ilaria also stated in his December 2012 report that Plaintiff could only lift/carry less than ten pounds on her right side. (R. 516). The ALJ rejected this limitation as well. (R. 18 n.1). In doing so, she noted that treating physician Dr. DeTulio reported that Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently. (R. 21; R 530). Dr. Galst went a bit further than Dr. DeTulio, concluding Plaintiff could lift and carry ten to twenty pounds frequently, and occasionally more than that. (R. 19; R. 864). Lastly, Dr. Ilaria's own November 2012 report stated that Plaintiff had good gross strength in her extremities. (R. 18; R. 847).

These conflicting pieces of medical evidence are a sufficient basis for the ALJ to reject Dr. Ilaria's proposed limitations for Plaintiff's standing and walking, and her lifting/carrying. It

might have been preferable if the ALJ had not merely rejected two of Dr. Ilaria's suggestions in a footnote with a "*see infra*" notation. (R. 18 n.1). However, the five pages of medical history in the opinion provide more than enough support for the ALJ's rejection of just two of Dr. Ilaria's multiple suggestions. (R. 17-21). ALJs are not required to follow a particular format in their analyses, only to "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

  *5. Plaintiff's Credibility*

  The ALJ largely believed Plaintiff's account of her symptoms, noting "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 19). However, the ALJ called Plaintiff's statements about the "intensity, persistence and limiting effects" of her symptoms "not entirely credible." (*Id.*). Plaintiff argues that (1) the ALJ failed to consider all seven required factors when making her credibility judgment, and (2) the ALJ's credibility judgment was not based on substantial evidence. (Pl.'s Br., ECF No. 6, at 11-13). Plaintiff specifically alleges that the ALJ failed to properly evaluate Plaintiff's credibility with regards to her "complaints of fatigue, and cognitive limitations." (*Id.* at 11).

  As an initial matter, the ALJ appeared to fully credit Plaintiff's complaints of fatigue and cognitive limitations. The ALJ stated in the RFC: "as to the *mental demands* of the work, I find that because of fatigue experienced during the workday, the claimant is only able to perform jobs that are simple and repetitive." (R. 16). It is illogical for Plaintiff to argue that the ALJ made a faulty credibility judgment by finding the Plaintiff credible on this point.

  The ALJ was more doubtful about the severity of Plaintiff's other symptoms. 20 C.F.R. Section 404.1529(c)(3) lists seven factors the Social Security Administration will consider when

evaluating a claimant's symptoms. The list is not comprehensive, nor is it mandatory for ALJs to go through each factor on the list in their opinions. 20 C.F.R. § 404.1529(c)(3) (stating "Factors . . . which we will consider include:"); *Green v. Colvin*, No. 13-3463, 2014 WL 3105037, at *7 (D.N.J. July 2, 2014) (noting there is no need to recite each factor). The ALJ discussed several of the factors, such as Plaintiff's daily activities and Plaintiff's functional limitations due to her symptoms. (R. 20-21). Other factors, such as what medication a claimant takes to relieve his/her symptoms, are less relevant for Plaintiff, whose primary symptoms include lack of fine motor skills and fatigue. *See Green*, 2014 WL 3105037, at *7 (referring to the seven factors as "the seven pain factors"); *Centeno v. Comm'r of Soc. Sec.*, No. 09-6023, 2010 WL 5068141, at *8 (D.N.J. Dec. 6, 2010) (noting that ALJs should analyze the factors that are applicable to the plaintiff's situation). The ALJ did not err by declining to recite that she had considered each factor when judging Plaintiff's credibility.

Plaintiff's second argument, that the ALJ's judgment was not based on substantial evidence, is negated by the ALJ's in-depth review of Plaintiff's medical records. (R. 17-21). Plaintiff's daily activities and the conflicting medical opinions discussed in the above section are sufficient evidence both to set aside two of Dr. Ilaria's suggestions, and to cast doubt on Plaintiff's account of the severity of some of her symptoms.

### 6. Plaintiff's Ability to Perform Light Work

The ALJ determined that Plaintiff could only perform a limited range of "light work," as defined in 20 C.F.R. Section 404.1567(b). (R. 22). A vocational expert testified that considering Plaintiff's RFC, age, education, and work experience, Plaintiff could perform the following jobs: counter clerk, photocopy operator, and garment sorter. (*Id.*). The ALJ fully credited the vocational expert's opinion. (R. 23). Plaintiff argues that the Dictionary of Occupational Titles

states that all these jobs require frequent use of the hands, reaching, and manual dexterity, which Plaintiff lacks. (Pl.'s Br., ECF No. 6, at 6). Plaintiff additionally argues that "under the regulations a light job requires standing six hours in an eight hour day," while the ALJ found that Plaintiff should stand for no more than four hours in an eight hour day. (*Id.*).

Plaintiff is factually wrong in both arguments. The Dictionary of Occupational Titles states that counter clerk and garment sorter positions are suitable for individuals in the lowest 1/3 of the population (excluding the bottom 10%) in terms of manual dexterity and finger dexterity. DOT # 249.366-010, 1991 WL 672323; DOT # 222.687-014, 1991 WL 672131. Photocopy clerks may also be in the bottom 1/3 for finger dexterity, though they must be in the middle 1/3 of the population for manual dexterity. DOT # 207.685-014, 1991 WL 671745. The ALJ found that Plaintiff was restricted to only occasional fine manipulation with her right hand, with no other limitations on either hand. (R. 16). Plaintiff's single fine manipulation restriction does not prevent her from performing the jobs the vocational expert selected from the Dictionary of Occupational Titles. *See Diehl v. Barnhart*, 357 F. Supp. 2d 804, 822 (E.D. Pa. 2005) (noting that a plaintiff with only limited use of his right hand could perform jobs that require reaching, handling, or fingering using his left hand with occasional help from his right hand).

Plaintiff provides no citation for her assertion that a light job requires standing for six hours in an eight hour workday. (Pl.'s Br., ECF No. 6, at 6). Neither the definition of light work in the Code of Federal Regulations, nor the definition in the Dictionary of Occupational Titles specifies a minimum number of hours that an individual must stand in order to do light work. 20 C.F.R. § 404.1567(c); DOT, Appx. C, 1991 WL 688702. To be capable of a full range of light work, a person must be capable of "a good deal of walking or standing," 20 C.F.R. § 404.1567(c), but the ALJ found that Plaintiff is not capable of a full range of light work, and

13

limited her accordingly. (R. 22). Therefore, Plaintiff's arguments on this point fail.

## CONCLUSION

For the reasons discussed above, the Commissioner's decision will be affirmed. An appropriate Order will follow.

                                                             */s/ Anne E. Thompson*
                                                             ANNE E. THOMPSON, U.S.D.J.